IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CORE COMMUNICATIONS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| PENNSYLVANIA PUBLIC UTILITY COMMISSION; | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Core Communications, Inc. ("Core"), by its attorneys, alleges as follows:

**INTRODUCTION**

1. This Complaint seeks declaratory and injunctive relief against the Pennsylvania Public

Utility Commission ("PA PUC") for violations of the Federal Telecommunications Act of 1996,

47 U.S.C. §§ 251-252, et. seq., in connection with the PA PUC's interpretation and

enforcement of telecommunications Interconnection Agreements that are governed by the

Telecommunications Act of 1996.

2. The Telecommunications Act of 1996 delegates authority to state public utility

commissions such as the PA PUC to review and approve "interconnection agreements" ("ICAs")

formed between competitive and incumbent telecommunications carriers, and these ICAs are

intended to implement the market-opening provisions of the Telecommunications Act of 1996.[1]

---

[1]     Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996), 47 U.S.C. §§ 251-252, et seq; and see, Core Commc'ns, Inc. v. Verizon Pennsylvania, Inc., 493 F.3d 333, 344 (3d Cir. 2007).

3.   Interpretation and enforcement actions that arise after a state public utility commission has approved an interconnection agreement must be litigated in the first instance before the relevant state commission. A party may then proceed to federal court to seek review of the commission's decision, as Core is doing with this Complaint.[2]

4.   Under section 252 of the  Federal Telecommunications Act of 1996 related to ICAs, "[i]n any case in which a State commission makes a determination under the Federal Telecommunications Act of 1996,  any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section." 47 U.S.C. § 252(e)(6). Although 47 U.S.C. § 252(e)(6), on its face, only applies to state commission determinations in the arbitration of ICA rates, terms and conditions, this court has determined that state commissions also have a limited role in the adjudication of post-formation ICA disputes.[3]

5.   Complaints seeking review of state public utility commission interpretation and enforcement of ICAs are subject to a four-year statute of limitations pursuant to 28 U.S.C. § 1658.[4]

6.   Core brings this action to seek declaratory and injunctive relief against ongoing violations of federal law by the PA PUC, pursuant to 47 U.S.C. § 252(e)(6),  related to the PA PUC's interpretations of certain ICA that are governed by federal law, as set forth more fully below.

## PARTIES

---

[2] Core Commc'ns, Inc. v. Verizon Pennsylvania, Inc., 493 F.3d 333, 344 (3d Cir. 2007).

[3] See, Core Commc'ns, Inc., 493 F.3d, at 344.

[4] See, Bell Atlantic-Pennsylvania, Inc. v. Pa. Pub. Util. Comm'n, 107 F. Supp. 2d 653, 668 (E.D. Pa. 2000).

2

7.      Plaintiff Core is a District of Columbia corporation with headquarters at 213 S Main St, Anderson, SC 29624. Core is certified by the PA PUC to provide competitive local exchange telecommunications services throughout the Commonwealth of Pennsylvania.

8.      Defendant PA PUC is a regulatory agency created and existing under the laws of the Commonwealth of Pennsylvania with jurisdiction to the extent conferred by Pennsylvania law over the intrastate activities of telecommunications companies operating in Pennsylvania.

## OVERVIEW OF RELIEF SOUGHT

9.      This Complaint involves multiple improper interpretations of Interconnection Agreements by the PA PUC that violated the federal Telecommunications Act of 1996 and the orders of the Federal Communications Commission ("FCC") implementing that law.

10.      On December 23, 2016, the PA PUC issued an Opinion and Order in consolidated complaint proceedings brought by Core against Verizon Pennsylvania, Inc ("Verizon PA") and Verizon North LLC ("Verizon North") (collectively, "Verizon"), based on claims arising out of ICAs between Core and Verizon PA and between Core and Verizon North (the "2016 Order," attached hereto as **Exhibit A**).[5] Following a petition for reconsideration filed by Core, on April 20, 2017, the PA PUC entered an Opinion and Order on Reconsideration (the "2017 Order," attached hereto as **Exhibit B**).[6]

---

[5]      Opinion & Order, <u>Core Communications, Inc. v. Verizon Pennsylvania, Inc and Verizon North, LLC</u>, Pa.P.U.C. Docket Nos. C-2011-2253750 & C-2011-2253787 (Dec. 23, 2017).

[6]      Opinion & Order on Reconsideration, <u>Core Communications, Inc. v. Verizon Pennsylvania, Inc and Verizon North, LLC</u>, Pa.P.U.C. Docket Nos. C-2011-2253750 & C-2011-2253787 (Apr. 20, 2017).

11.     On October 4, 2018, the PAPUC entered an Opinion and Order (the "2018 Order," attached hereto as **Exhibit C**) in a separate Complaint brought by Core against Verizon based on claims arising out of the ICA between Core and Verizon PA.[7]

12.     In each of these orders, the PAPUC acted pursuant to its delegated authority to interpret and enforce ICAs formed between competitive and incumbent local exchange carriers under the Telecommunications Act of 1996 .[8]

13.     In the 2016 and 2017 Orders, the PA PUC made several determinations which exceeded its authority under federal law, including (a) that the FCC's 2001 *ISP Remand Order*[9] applies to long-distance traffic that Verizon sent Core,[10] even though that order is limited in scope to locally-dialed traffic to Internet service providers;[11] (b) that Core must pay all bills issued by Verizon pursuant to its interstate access tariffs filed with the FCC even though the Commission has no jurisdiction over such interstate access tariff claims;[12] (c) that the four-year Pennsylvania statute of limitations for ordinary contracts applied to Verizon's interstate access tariff claims (in lieu of the two-year statute set forth in the federal Communications Act for such

---

[7]     Core Communications, Inc. v. Verizon Pennsylvania LLC, 2018 Pa. PUC LEXIS 361, *2 (Pa. P.U.C. October 4, 2018).

[8]     Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996), 47 U.S.C. §§ 251-252, et seq; and see, Core Commc'ns, Inc. v. Verizon Pennsylvania, Inc., 493 F.3d 333, 344 (3d Cir. 2007)("[I]nterpretation and enforcement actions that arise after a state commission has approved an interconnection agreement must be litigated in the first instance before the relevant state commission. A party may then proceed to federal court to seek review of the commission's decision or move on to the appropriate trial court to seek damages for a breach, if the commission finds one.").

[9]     In Re Implementation of Local Competition Provisions in Telecommunications Act of 1996 - Intercarrier Compensation for ISP-Bound Traffic, 16 F.C.C. Rcd. 9151, 9152 (2001)("*ISP Remand Order*")("In this Order, we reconsider the proper treatment for purposes of intercarrier compensation of telecommunications traffic delivered to Internet service providers (ISPs).").

[10]    2016 Order, at 54-58; 2017 Order, at 19-23.

[11]    Brief for Amicus Curiae Federal Communications Commission in Global NAPs, Inc. v Verizon New England, Inc., U.S.C.A. (1st Cir.) Docket No. 05-2657 (March 13, 2006), at 5 ("[T]he administrative history that led up to the *ISP Remand Order* indicates that in addressing compensation, the Commission was focused on calls between dial-up users and ISPs in a single local calling area.").

[12]    2016 Order, at 145-47.

4

claims);[13] (d) that Core must limit its billings to Verizon using a "LERG-LNP" methodology (introduced for the first time by Verizon's "subject matter expert" witness in written testimony before the Commission),[14] even though the ICAs set forth a more expansive "CPN" methodology, and even though the Commission found that Verizon was not limited, when it billed Core, to billing pursuant to the LERG-LNP methodology;[15] (e) that Verizon, but not Core, was entitled to bill for 100% of the telecommunications traffic Core sent Verizon, even when a portion of that traffic admittedly originated on the network of a third-party carrier;[16] and (f) overrode the express terms of Core's ICA with Verizon to require Core to pay any charge Verizon chooses to levy, or else escrow any disputed amounts,[17] when the ICA states no such requirement.

14.     In the 2018 Order, the PA PUC exceeded its authority under federal law by determining that (a) Verizon did not order telecommunications facilities from Core under the parties' ICA,[18] and (b) Core was not authorized under the ICA to bill for rates, physical telecommunications facilities, tandem trunk ports, multiplexing, entrance facilities and dedicated transport it charged to Verizon.[19]

15.     With its 2016 and 2017 Orders, the PA PUC acted arbitrarily and capriciously and in violation of applicable federal law when it denied Core's claims for unpaid intercarrier compensation under the ICA and awarded Verizon the full amount of its claims under the ICA

---

[13]     2016 Order, at 114-120; 2017 Order, at 35-36; 47 U.S.C. 415(a).
[14]     2016 Order, at 122-26.
[15]     2016 Order, at 125-26.
[16]     2016 Order, at 125-26; 2017 Order, at 15-16.
[17]     2016 Order, at 145-47; and 155-56 (Ordering Paragraphs 14 and 17).
[18]     2018 Order, at 20-21.
[19]     2018 Order, at 54-63.

for services and facilities charges, the vast majority of which were not on the record before the

PA PUC, and ordered Core to pay any bill Verizon may issue in the future.

16.    With its 2018 Order, the PA PUC acted arbitrarily and capriciously and in

violation of applicable law when it determined that Core was not entitled to payment from

Verizon under the ICA for rates, physical telecommunications facilities,  tandem trunk ports,

multiplexing, entrance facilities and dedicated transport that Core provided and charged to

Verizon PA.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 2201, 47 U.S.C. § 252(e)(6)[20] and the Supremacy Clause, U.S. Const. art.

VI, cl. 2.

18.    Venue in this District is proper under 28 U.S.C. § 1391(b).

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Telecommunications Act of 1996

19.    The Third Circuit has summarized the import of TA-96 as follows:

> In passing the Telecommunications Act of 1996, Congress altered
> the regulatory scheme for local telephone service. The Act requires
> that local service, which was previously operated as a monopoly
> overseen by the several states, be opened to competition according

---

[20]    See, Core Commc'ns, Inc., 493 F.3d, at 344.

> to standards established by federal law. Under the Act, the
> incumbent local telephone service carriers must negotiate or
> arbitrate agreements with competitive local carriers, allowing
> entering carriers either to connect their equipment to the existing
> network or to purchase or lease elements and services of the
> existing network. The terms, rates, and conditions of such
> arrangements are set forth in interconnection agreements
> established between the carriers. The state utility commissions are
> empowered, but not required, to review and give final approval to
> interconnection agreements to ensure that they comport with
> federal law.[21]

20.     "[T]he Act sought not merely to balance interests between sellers and buyers, but

to meaningfully reorganize utilities markets by rendering monopolies vulnerable to

competition.[22]

## B.     The Relationship Between Verizon and Core

21.     From its inception, the relationship between Verizon and Core has been

characterized by profound disagreement about the scope of the Telecommunications Act of 1996

and Verizon's duties thereunder.[23]

22.     In 2011 these disagreements came to a head, when Verizon suddenly refused to

pay Core's intercarrier compensation bills – bills Verizon had paid steadily for years – because,

Verizon cryptically stated, the bills were "invalid." In discussions following Verizon's refusal to

pay, Core was unable to discern why Verizon considered the previously compensable traffic to

now be non-compensable. When Core first brought the matter before the Commission, it found

that:

---

[21]     MCI Telecomm. Corp. v. Bell Atl. Pennsylvania, 271 F.3d 491, 497 (3d Cir. 2001).
[22]     Verizon Pennsylvania, Inc. v. Pennsylvania Pub. Util. Comm'n, 380 F. Supp. 2d 627, 631 (E.D. Pa. 2005),
citing, Verizon Communications, Inc. v. F.C.C., 535 U.S. 467, 488-89, 122 S.Ct. 1646, 152 L.Ed.2d 701 (2002).
[23]     See, e.g., Verizon Maryland, Inc. v. Core Commc'ns, Inc., 405 F. App'x 706, 714 (4th Cir. 2010)("[W]e
find that Verizon had a duty to provide Core with the requested interconnection and therefore breached its contract.
The district court's grant of summary judgment is reversed and this matter is remanded for further proceedings
consistent with this decision including a determination of damages.").

7

Verizon has instituted what amounts to a "self-help" remedy by unilaterally deciding to withhold payment to Core for the traffic at issue without providing a factual or legal basis for such unilateral action. Verizon's conduct appears to violate the spirit, if not the letter, of the Commission-approved ICAs between the Parties. A violation of the ICAs in turn would constitute a violation of the Telecommunications Act of 1996. 47 U.S.C. §§ 251 and 252.[24]

### C.   Proceedings Before the Commission

23.   The 2016 and 2017 Orders related to Formal Complaints that were filed by Core against Verizon for Verizon's sudden cessation of payment for intercarrier compensation invoices (i.e. bills for reciprocal compensation) that were issued by Core pursuant to the ICAs, and Verizon's counterclaims against Core for invoices for facilities and services that Verizon claimed were owed by Core.

24.   Core argued that Verizon breached the Parties' ICAs when it withheld payment of intercarrier compensation invoices in the spring of 2011, without any legitimate basis for doing so.  Additionally, Core alleged that Verizon breached the Parties' Verizon PA ICA by failing to mirror rates as outlined in the *ISP Remand Order*.  In this regard, Core argued that although Verizon has paid Core at the FCC's prescribed mirroring rate of $0.0007/MOU for locally-dialed traffic destined for Internet Service Providers (ISPs), such ISP-bound traffic is compensable at the higher reciprocal compensation rate due to Verizon's failure to mirror rates or to properly "opt-in" to the ISP Remand Order.

25.   Verizon argued that Core's intercarrier compensation bills were not valid and Verizon sought a refund from Core for reciprocal compensation traffic that Verizon had

---

[24]   Core Commc'ns, Inc., PAPUC Docket No.P-2011-2253650, 2011 WL 5121092, at *1 (Sept. 12, 2011).

previously paid.  Verizon also alleged that Core had not paid Verizon's invoices for various types of telecommunications facilities and services.

26.       Core denied Verizon's counterclaims and alleged that Verizon had improperly billed Core for the facilities and services at issue.

27.       On December 23, 2016, the PA PUC issued the 2016 Order, which granted Core's claims, in part, and denied them, in part, and ruled in favor of Verizon on its counterclaims in part.

28.       Core sought timely reconsideration of the PA PUC's Order, which the Commission granted, but ultimately the Commission issued its 2017 Order which dismissed Core's claims against Verizon for unpaid intercarrier compensation.

29.       On February 18, 2014, Core filed its Complaint against Verizon PA for nonpayment of invoices for Core's provision of the physical telecommunications facilities necessary for Verizon PA to transport its originating traffic from the parties' point of interconnection ("POI") on Verizon PA's network to Core's network.

30.       The Commission's 2018 Order dismissed Core's Complaint, and held that the ICA between the parties did not permit Core to bill Verizon PA for the facilities at issue.

## UNLAWFUL DETERMINATIONS IN THE 2016 AND 2017 ORDERS

31.       The PA PUC's 2016 and 2017 Orders violated federal law when they adjudicated and purported to enforce Verizon's interstate access tariffs against Core.

9

32.     Under the federal Communications Act, the FCC has exclusive jurisdiction over *inter*-state communications, 47 U.S.C. § 151, 152(a), while the states retain authority to regulate *intra*-state communication service. 47 U.S.C. § 152(b).

33.      In telecommunications law, it is axiomatic that "the States do not have jurisdiction over interstate communications…"[25]

34.

35.     Specifically regarding "an action for recovery of unpaid access charges that are allegedly due under the terms of a federal tariff," the FCC has found that "[t]he proper forum for such a dispute is the federal district court."[26]

36.     Verizon's interstate access tariff, FCC No. 1, is not only filed with the FCC, it is itself federal law.[27]

37.     Therefore, the federal district courts have jurisdiction over a claim for amounts claimed to be due under a tariff."[28] The PA PUC has no more authority to interpret or enforce a federal tariff as it would federal occupational safety and health laws.

38.     The PA PUC acted outside of its authority when it awarded Verizon damages arising out of Verizon's interstate access tariffs, and its actions in this regard are preempted by federal law. Further, the PA PUC's award of damages was not based on substantial evidence and was otherwise arbitrary and capricious.

---

[25]     In the Matter of Am. Tel. & Tel. Co. & the Associated Bell Sys. Cos. Interconnection with Specialized Carriers in Furnishing Interstate Foreign Exch. (Fx) Serv. & Common Control Switching Arrangements (Ccsa), 56 F.C.C.2d 14, 20 (1975).

[26]     In the Matter of U.S. Telepacific Corp., D1b1a1 Telepacific Commc'ns, Complainant, 19 F.C.C. Rcd. 24552, 24555–56 (2004).

[27]     MCI Telecommunications Corp. v. Garden State Inv. Corp., 981 F.2d 385, 387 (8th Cir.1992). ("Federal tariffs are not mere contracts; they have the force of federal law.").

[28]     N. Valley Commc'ns, LLC v. Qwest Commc'ns Corp., 2009 DSD 11, 659 F. Supp. 2d 1062, 1064 (D.S.D. 2009).

39.     Even assuming *arguendo* that the PA PUC possesses the jurisdiction to adjudicate Verizon interstate access tariff claims, the PA PUC's 2016 and 2017 Orders violated federal law when the PA PUC applied a four-year state law statute of limitations to Verizon's interstate access tariff claims, when federal law applies a two-year statute to such claims.

40.     The PA PUC awarded Verizon damages arising out of Verizon's interstate access tariffs and expressly permitted Verizon to collect damages going back four years, pursuant to Pennsylvania statute applicable to contract claims.[29]

41.     The federal statute of limitations applicable to an interstate access tariff claim, 47 U.S.C. § 415(a), is two years.

42.     The PA PUC acted outside its authority when it applied a four-year statute of limitations to Verizon's interstate access tariff claims, and its actions in this regard are preempted by federal law.

43.     The PA PUC also violated federal law when it read the FCC's *ISP Remand Order* to apply to long-distance traffic, when the FCC has made clear that the order applies only to locally-dialed traffic.

44.     In an *amicus brief* to the First Circuit Court of Appeals, the FCC expressly stated that the *ISP Remand Order* applies only to local—not toll—calls to ISPs.[30]

45.     The PA PUC's interpretation of the *ISP Remand Order* is contrary to the FCC's interpretation, and is therefore preempted.

---

[29]     2016 Order, at 118; 2017 Order, at 35-36.

[30]     Brief for Amicus Curiae Federal Communications Commission in Global NAPs, Inc. v Verizon New England, Inc., U.S.C.A. (1st Cir.) Docket No. 05-2657 (March 13, 2006), at 5 ("[T]he administrative history that led up to the *ISP Remand Order* indicates that in addressing compensation, the Commission was focused on calls between dial-up users and ISPs in a single local calling area.").

46.     The PA PUC's 2016 and 2017 Orders also violated federal law when the PA PUC (1) read the ICAs to permit Verizon to send Core "third-party" traffic over the interconnection trunks, but not compensate Core for such traffic and not send Core the information Core needed to bill the third-party for such traffic, (2) read those same ICAs to require Core to compensate Verizon for third party traffic; and (3) adjudicated a complex damages model in favor of Verizon, based on a methodology not set forth in the ICAs.

47.     The ICA, Attachment IV, § 7.3, directs the parties to bill one another for "each minute" of traffic on the local trunks.

48.     The ICA, Attachment IV, § 7.3, directs the parties to use "Calling Party Number (CPN)" to determine whether a call is Reciprocal Compensation or Toll.

49.     The record is clear that Core used CPN to determine whether Verizon's calls were Reciprocal Compensation or Toll.

50.     The PA PUC ignored the ICA's billing provisions, dismissing them as "automatic billing provisions" and instead accepted Verizon's methodology, whereby Core is supposed to use the Local Exchange Routing Guide ("LERG") to determine whether traffic is compensable by Verizon or another carrier using Verizon's network to reach Core.[31]

51.     The PA PUC compounded its error when it determined that Verizon was permitted to bill Core for third-party traffic but Core was not permitted to bill Verizon for third-party traffic."[32]

---

[31]     2016 Order, at 25-26.

[32]     2016 Order, at 123; 2017 Order, at 15-16.

12

52.     The PA PUC further erred in calculating damages due to Verizon, based on its LERG methodology, even though the PAPUC's role in ICA enforcement was limited to determining whether a breach occurred.[33]

53.     The PA PUC's 2016 and 2017 Orders also violated federal law when the PAPUC imposed pay-or-escrow duties on Core which are not set forth in the ICAs.

54.     The PA PUC required Core to pay any charge Verizon chooses to levy, or else escrow any disputed amounts, but the ICA states no such requirement.[34]

55.     The PA PUC's errors violate of federal law because the provisions of an ICA are deemed to be federal law in and of themselves.[35]

56.     The PA PUC erred in its interpretation of the ICAs, and its error is preempted by federal law. Further, the PA PUC's findings and award of damages were not based on substantial evidence and were otherwise arbitrary and capricious.

### UNLAWFUL DETERMINATIONS IN THE 2018 ORDER

57.     The PA PUC's 2018 Order violated federal law because it interpreted the ICA as not permitting Core to bill Verizon PA for facilities and services that were provisioned by Core.

58.     The PA PUC violated federal law when it determined that the ICA did not authorize Core to bill Verizon for facilities based on Verizon's submission of "Access Service Requests") ("ASRs"),[36] even though the plain terms of the ICA, as set forth in Part B and in

---

[33]     Core Commc'ns, Inc. v. Verizon Pennsylvania, Inc., 493 F.3d 333, 344 (3d Cir. 2007).

[34]     2016 Order, at 145-47; and 155-56 (Ordering Paragraphs 14 and 17).

[35]     Level 3 Communs., LLC v. Ill. Bell Tel. Co., 2017 U.S. Dist. LEXIS 54295, *25-26, 2017 WL 1315796 (Apr. 10, 2017), vacated on motion of the parties, Level 3 Communs. v. Ill. Bell Tel. Co., 2020 U.S. Dist. LEXIS 38832 (Mar. 4, 2020)("[T]he Telecommunications Act requires parties to not only enter into interconnection agreements, but also to comply with their terms; thus violating the interconnection agreement constitutes a violation of the Act.").

[36]     2018 Order, at 20-23.

Attachment IV, Sections 4.3.1 and 4.3.2, state that an ASR may be used to order trunking and facilities between Core and Verizon PA for local interconnection and that orders between the Parties to establish, add, change, or disconnect trunks shall be processed using an ASR.

59.     The PA PUC violated federal law when it determined that the ICA's Pricing Appendix did not authorize Core to bill Verizon PA by mirroring the Verizon PA rates set forth in the Pricing Appendix and used to handle Verizon's originating traffic.[37]

60.     The PA PUC violated federal law when it determined that the ICA, Attachment IV, §§ 2.2.1, 2.2.1.1, and 2.4.2 and definition of Tandem Switching did not permit Core to bill Verizon PA for tandem trunk ports.[38]

61.     The PA PUC violated federal law when it determined that the ICA, Attachment IV, Section 2.4.2 and Attachment III, Section 10.2.4 of the ICA of the ICA, did not permit Core to bill Verizon PA for multiplexing and dedicated transport when Local Telecommunications Traffic is flowing from Verizon PA to Core.[39]

62.     The PA PUC violated federal law when it determined that ICA, Attachment IV, Section 1.2.2, 1.2.1.1 (outlining the definition of an IP), 1.2.1.2 (outlining the definition of a POI), and 2.4.2 of the ICA and Section A, Item II.A of the Pricing Appendix did not permit Core to bill Verizon PA for dedicated transport and entrance facilities.[40]

63.     The PA PUC violated federal law when it ordered Core not to issue bills for services rendered under the ICA.[41]

---

[37]     2018 Order, at 54-63.
[38]     *Id.*
[39]     *Id.*
[40]     *Id.*
[41]     2018 Order, at 73 (Ordering Paragraph No. 4).

14

64.     The PA PUC's errors are violations of federal law because the provisions of an ICA are deemed to be federal law in and of themselves.

65.     The PA PUC erred in its interpretation of the ICAs, and its error is preempted by federal law. Further, the 2018 Order was not based on substantial evidence and was otherwise arbitrary and capricious.


**PRAYER FOR RELIEF**

WHEREFORE, Core prays that this Court grant it the following relief:

(a)     Enter judgment in favor of Core, declaring pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that the PA PUC's 2016, 2017 and 2018 Orders are in violation of and preempted by federal law, are not based on substantial evidence or are otherwise arbitrary and capricious.

(b)     Hold that the PA PUC acted outside of its authority when it ordered the payment of damages to  Verizon Pennsylvania, Inc. and Verizon North, LLC arising out of Verizon's interstate tariffs,

(c)     Hold that the PA PUC violated federal law when it applies a state-law four-year statute of limitations to Verizon's interstate access claims, in lieu of the applicable two-year federal statute.

(d)     Hold  that the PA PUC violated federal law when it read the FCC's *ISP Remand Order* to apply to long-distance traffic,

(e)     Hold that the PA PUC violated federal law when it interpreted the ICAs between the parties to allow Verizon to send Core "third-party" traffic over the interconnection trunks, but not compensate Core for such traffic and not send

15

Core the information Core needed to bill the third-party for such traffic, while also requiring Core to compensate Verizon for third party traffic,

(f)     Hold that the PA PUC violated federal law when it  calculated damages due to Verizon under the ICAs and interpreted the ICAs between the parties as imposing pay-or-escrow duties on Core which are not set forth in the ICAs,

(g)     Hold that the PA PUC violated federal law when it interpreted the ICA between the parties as not permitting Core to bill Verizon for telecommunications facilities and services that were provisioned by Core,

(h)     Enter a permanent injunction in favor of Core, barring enforcement of the PA PUC's 2016, 2017 and 2018 Orders, and

(i)      Reverse and vacate the portions of the PA PUC's 2016, 2017 and 2018 Orders which violate federal law, as set forth above.

Respectfully submitted,

STEVENS & LEE, P.C.

By:  /s/*Mark D. Bradshaw*

Mark D. Bradshaw, Esquire
Attorney I.D. No. 61975
17 North Second Street, 16th Floor
Harrisburg, PA  17101
(717) 255-7357
mdb@stevenslee.com
*Attorney for Plaintiff Core Communications, Inc.*

Dated: October 2, 2020

16